IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LORI BOWEN,

    Plaintiff,                    *

                                        Civil Action No. RDB-17-1571

    v.                       *

STATE OF MARYLAND,       *
DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONAL     *
SERVICES, *et al.*,

                               *

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On May 28, 2013, Plaintiff Lori Bowen ("Plaintiff" or "Bowen"), an Asian female, resigned from her position as a Parole and Probation Agent with Defendant State of Maryland, Department of Public Safety and Correctional Services ("DPSCS"). A month and a half later, she amended her previous Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") to add that she was constructively discharged. Almost three years later, on April 14, 2016, the EEOC notified Bowen that it had found reasonable cause to believe that a violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, had occurred. Subsequently, on March 15, 2017, she received a Notice of Right to Sue from the U.S. Department of Justice. Three months later, on June 7, 2017, Bowen initiated suit in this Court against DPSCS and Stephen T. Moyer ("Moyer") (collectively, "Defendants"), in his official capacity as Secretary of DPSCS, alleging violations of the ADA as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Four months later, Bowen filed an Amended Complaint alleging additional violations under the Rehabilitation Act of 1973, 29 U.S.C. §§ 709, *et seq.*

Currently pending before this Court is Defendants' Motion to Dismiss the Amended Complaint.[1] (ECF No. 15.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). As explained below, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 15) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED as to Plaintiff's Rehabilitation Act and Title VII claims and Counts III-VI are DISMISSED. Further, Plaintiff's claims under Count VII for hostile work environment under the Rehabilitation Act and Title VII are also DISMISSED. However, as to Plaintiff's ADA claims, while she is barred under the Eleventh Amendment from seeking *monetary damages* against Defendants under the ADA, at this stage she has plausibly alleged claims under the ADA for the prospective injunctive relief of reinstatement to her former position. Accordingly, the Motion is DENIED as to Bowen's claims for prospective injunctive relief under Counts I, II, and VII, and Plaintiff may proceed to seek reinstatement under the ADA for her claims of discrimination, retaliation, and hostile work environment.[2]

## BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). In April of 2004, Plaintiff Bowen, an Asian female, was hired as a Parole and Probation Agent by the State of Maryland, Department of Public Safety and Correctional Services ("DPSCS"). (Am. Compl., ECF No. 9 at ¶ 8.) Stephen Moyer is the Secretary of DPSCS. (*Id.* at ¶ 3.) Beginning

---

[1] Also pending is Defendants' Motion to Dismiss the Original Complaint. (ECF No. 6.) This Motion is MOOT.

[2] The Amended Complaint alleges all of Plaintiff's hostile work environment claims—under the ADA, Rehabilitation Act, and Title VII—under Count VII. To be clear, Count VII proceeds only as far as Plaintiff seeks prospective injunctive relief for her claim of a hostile work environment under the ADA.

in late 2010 or early 2011, Bowen had trouble climbing stairs and standing, sitting, or walking for more than fifteen minutes due to a previous injury on the job. (*Id.* at ¶ 10.) At various times throughout her employment, she was on approved leave under the Family and Medical Leave Act of 1993, 29 U.S.C §§ 2601 *et seq.* ("FMLA").[3] (*Id.* at ¶ 11.)

Bowen asserts that due to her disability,[4] in April and June of 2012, she requested accommodations to work part time, work remotely from home, and/or work on light duty. (*Id.* at ¶ 14.) On June 19, 2012, her requests to work part time or remotely were denied. (*Id.* at ¶ 15.) Bowen then asserts that on June 21, due to her request and her doctor's advice that she be placed on light duty, she was sent home without pay. (*Id.* at ¶ 16.) She was informed that there is no "light duty" for her position, and she could not return to work until her doctor released her from light duty status. (*Id.* at ¶ 17.) Around this time, a coworker's request to donate leave to Bowen through the "Employee-to-Employee Leave Donation Program" was also denied. (*Id.* at ¶ 33.) Plaintiff appealed the denial, however, and on or around August 6, 2012, the donated leave request was approved. (*Id.* at ¶¶ 33-37.) Accordingly, Plaintiff resumed working on August 7, 2012. (*Id.* at ¶ 40.)

On August 14, 2012, Bowen's request for the light duty accommodation was denied. (*Id.* at ¶ 19.) She asserts that DPSCS "maintains a formal or informal policy of immediately denying part time and light duty work prior to engaging in the interactive process under the ADA." (*Id.* at ¶ 20.) She further asserts that she was denied her accommodations while two Caucasian and non-disabled employees in her office were permitted to work part time or on

[3] She was also on intermittent FMLA leave to care for her disabled child. (ECF No. 9 at ¶ 11.)
[4] Plaintiff does not specifically identify her disability, but alleges that she "was a qualified individual with a disability and caregiver under the American with Disabilities Act." (ECF No. 9 at ¶ 12.)

light duty. (*Id.* at ¶¶ 50-52.) Shortly after this second request was denied, Bowen was charged with a disciplinary infraction, and later in August of 2012, reassigned to another unit under the supervision of Shena Castain. (*Id.* at ¶ 38.) During her time working under Castain, Plaintiff asserts that she was the subject of several discriminatory and retaliatory acts, including Castain raising her voice at Bowen, excluding her from an employee appreciation event, and instructing an Agent Assistant to not help Bowen enter certain DPSCS documents. (*Id.* at ¶¶ 45-49.) She also alleges that during her employment, she was falsely charged with a disciplinary infraction, required to attend mitigation conferences, and received reprimands. On November 11, 2012, Bowen filed a Charge of Discrimination with the EEOC, asserting that she "was subjected to discrimination based on race, color, retaliation and disability." (*Id.* at ¶¶ 79-80.)

In February of 2013, Bowen requested FMLA leave for various dates in March to attend medical appointments. (*Id.* at ¶ 60.) After initially being told that her leave had expired, the leave was ultimately approved intermittently for a right hand/forearm condition from February 8, 2013 through May 17, 2013. (*Id.* at ¶¶ 56-62, 67.) She also asserts that during this time some of her leave requests were denied. (*Id.* at ¶¶ 68-69.) On March 22, 2013, Plaintiff filed an Amended Charge with the EEOC, adding allegations that her transfer was evidence of discrimination and retaliation, and further asserting that she had been subjected to a hostile work environment and denied FMLA leave since filing the Original Charge. (*Id.* at ¶ 84.) After subsequent requests to be transferred, on May 28, 2013, Bowen asserts that she resigned due to her "intolerable conditions." (*Id.* at ¶ 131.)

A month and a half later, on July 11, 2013, Bowen filed a Second Amended Charge of

Discrimination with the EEOC, adding that she was constructively discharged. (*Id.* at ¶ 86.) Almost three years later, on April 14, 2016, the EEOC issued Bowen a Cause Finding, finding that there was reasonable cause to believe that a violation of the Americans with Disabilities Act had occurred. (*Id.* at ¶¶ 6, 93.) Notably, Plaintiff does not assert that the EEOC found reasonable cause to believe that she had been discriminated based on her race, which she had also alleged in her EEOC Charges. Subsequently, on March 15, 2017, Bowen received a Notice of Right to Sue letter from the U.S. Department of Justice. (*Id.* at ¶ 6.) Three months later, on June 7, 2017, Bowen initiated suit in this Court against DPSCS and Moyer alleging violations of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Compl., ECF No. 1.) Four months later, Bowen filed an Amended Complaint alleging additional violations under the Rehabilitation Act of 1973, 29 U.S.C. §§ 709, *et seq.* (Am. Compl., ECF No. 9.)

## STANDARD OF REVIEW

### I.     Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendants assert that some of Plaintiff's claims are barred because Defendants are entitled to immunity under the Eleventh Amendment. This Court treats motions to dismiss based on the Eleventh Amendment under Federal Rule of Civil Procedure 12(b)(1). *See Beckham v. National R.R. Passenger Corp.*, 569 F. Supp. 2d 542 (D. Md. 2008) ("[A]lthough Eleventh Amendment immunity is not a 'true limit' on this Court's subject matter jurisdiction, . . . the Court concludes that it is more appropriate to consider this argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise

its Article III power."); *see also Cook v. Springfield Hospital Center*, No. ELH-16-2024, 2016 WL 6124676, at *6 (D. Md. Oct. 19, 2016).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).

## II.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). While a complaint need not include "detailed factual allegations," it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of

those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot rely on bald accusations or mere speculation. *Twombly*, 550 U.S. at 555.

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, a court is not required to accept legal conclusions drawn from those facts. *Iqbal*, 556 U.S. at 678. "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## ANALYSIS

### I.     Americans with Disabilities Act Claims

Bowen brings three claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." § 12101(b)(2); *see also Magness v. Harford County*, No. ELH-16-2970, 2018 WL 1505792, at *9 (D. Md. Mar. 27, 2018). Specifically, Bowen claims that Defendants discriminated against her on the basis of her

disability in violation of Title I of the ADA (Count I) and retaliated against her for requesting reasonable accommodations and engaging in protected activities in violation of Title V of the ADA (Count II).[5] For these alleged violations, she seeks both monetary damages and prospective injunctive relief in the form of an order of reinstatement to her position as a Parole and Probation Agent with DPSCS. Defendants argue that her ADA claims are barred under the Eleventh Amendment.

Before addressing Defendants' Eleventh Amendment argument, this Court notes that the Amended Complaint does not identify Bowen's disability. Rather, after asserting that she suffered a work injury that left her with trouble standing, sitting, or walking for fifteen minutes or more, she summarily alleges that she "was a qualified individual with a disability and caregiver under the American with Disabilities Act." (Am. Compl., ECF No. 9 at ¶¶ 10, 12.) This Court also notes, however, that the EEOC issued Bowen a finding that there was reasonable cause to believe that a violation of the ADA had occurred. (*Id.* at ¶ 6.) Accordingly, at this stage in the proceedings, Bowen has plausibly alleged that she has a qualifying disability under the ADA.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. The United States Supreme Court has extended Eleventh Amendment Immunity to suits by citizens against their own states, explaining that "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting

---

[5] As explained above, Count VII alleges hostile work environment under all three statutes. Accordingly, Plaintiff's hostile work environment claim under the ADA is discussed *infra*, Part IV.

States may not be sued by private individuals in federal court." *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 362, 121 S.Ct. 955 (2001). The Eleventh Amendment also extends to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). In *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the United States Court of Appeals for the Fourth Circuit summarized two exceptions to Eleventh Amendment immunity which are of import here:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

*Id.* at 249.

Beginning with Plaintiff's claim under Title I of the ADA (Count I), Title I initially contained language abrogating the States' Eleventh Amendment immunity in federal court. However, in *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 362, 121 S.Ct. 955 (2001), the Supreme Court held that Congress did not act pursuant to a valid grant of constitutional authority when it abrogated the States' sovereign immunity to be sued for *monetary damages*. Accordingly, Count I is barred as far as Plaintiff seeks monetary damages. *See Cook v. Springfield Hospital Ctr.*, No. ELH-16-2024, 2016 WL 6124676, at *7 (D. Md. Oct. 19, 2016) (holding that the plaintiff's claim under Title I of the ADA for money damages was barred under the Eleventh Amendment).

However, Bowen also seeks prospective injunctive relief in the form of reinstatement under Title I of the ADA. As explained above, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex*

*rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908)).[6] In *Bland v. Roberts*, 730 F.3d 368 (4th Cir. 2013), the Fourth Circuit explained that "[b]ecause reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies." *See also Royster v. Gahler*, 154 F.Supp.3d 206, 231 (D. Md. 2015) (finding the defendant was not entitled to Eleventh Amendment immunity because the plaintiff sought reinstatement).

Defendants argue that this exception does not apply "because the cause of action on which [Plaintiff's] claim for relief is based, constructive discharge, facially lacks merit and fails to state a claim upon which relief can be granted." (ECF No. 25 at 2.) However, as the Supreme Court explained in *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 646, 122 S.Ct. 1753 (2002), "[t]he inquiry into whether suit lies under *Ex Parte Young* does not include an analysis of the merits of the claim." (citations omitted); *see also D.T.M. ex rel. McCartney v. Cansler,* No. 09-1441, 382 Fed. App'x 334, 337 (4th Cir. June 11, 2010) ("[T]he fact that Plaintiffs cannot prove entitlement to the prospective relief they seek does not mean that the relief they seek is not prospective."). Therefore, while the Eleventh Amendment bars Plaintiff from seeking *monetary damages* under Title I of the ADA against DPSCS or Defendant Moyer, the Defendants are not immune as far as she seeks prospective injunctive relief.

---

[6] This exception, known as the *Ex Parte Young* exception, was articulated by the United States Supreme Court in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908) and allows private citizens to petition federal courts to enjoin State officials in their official capacities from engaging in future conduct that would violate a federal statute or the Constitution.

The same analysis follows for Bowen's claim under Title V of the ADA (Count II). As this Court explained in *Cook v. Springfield Hospital Ctr.*, No. ELH-16-2024, 2016 WL 6124676 (D. Md. Oct. 19, 2016), a Title V claim "must be predicated on another part of the ADA because 'Title V prohibits discrimination against an employee who opposes an act or practice made unlawful by the substantive provisions of the ADA.'" *Id.* at *7 (quoting *Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001)). Here, Bowen's Title V claim is predicated on her Title I claim, and accordingly, she is also barred from seeking monetary damages under Title V of the ADA. *See Cook*, 2016 WL 6124676 at *7 (explaining that the plaintiff's Title V claim was barred under sovereign immunity because it was predicated on the plaintiff's Title I claim (citing *Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001))). However, for the same reasons explained above, Bowen may proceed under Title V of the ADA as far as she seeks the prospective relief of reinstatement to her former position.

In sum, while Bowen is barred from seeking *monetary damages* against the Defendants under the ADA in Counts I and II, at this stage she has plausibly alleged her ADA claims for the prospective injunctive relief of reinstatement to her former position. Accordingly, the Motion is DENIED as to Bowen's claims for prospective injunctive relief under Counts I and II, and Plaintiff may proceed to seek reinstatement under the ADA for her claims of discrimination and retaliation.

## II.     Rehabilitation Act Claims

Bowen also brings three claims under the Rehabilitation Act of 1973, 29 U.S.C. § 709, *et seq.* Specifically, she asserts that Defendants discriminated against her on the basis of her disability (Count III) and retaliated against her for requesting reasonable accommodations

and participating in protected activities (Count IV). Defendants argue that Plaintiff's claims are barred by a two-year statute of limitations.[7]

The Rehabilitation Act does not include a specific statute of limitations. However, it "is long settled that where federal law does not supply that information, the court will borrow the statute of limitations for the analogous state cause of action." *Davis v. Montgomery Cnty. Dep't of Transp.*, JFM-11-2637, 2012 WL 748392, at *5 (D. Md. Mar. 6, 2012) (citing *Bd. of Regents of the Univ. of the State of New York v. Tomanio*, 446 U.S. 478, 484 (1980)); *Ott v. Md. Dept. of Public Safety and Correctional Services*, No. RDB-16-3394, 2017 WL 3608181, at *3 (D. Md. Aug. 22, 2017). The Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-1013 is the state-law analogue to the Rehabilitation Act, and includes a two-year statute of limitations period. *Ott*, 2017 WL 3608181, at *4; *Bales v. Maryland Judiciary/Admin. Office of the Courts*, JFM-15-3293, 2016 WL 6879902, at *7 (D. Md. Nov. 22, 2016). Although Plaintiff filed the operative Amended Complaint adding her Rehabilitation Act claims on October 26, 2017, under Federal Rule of Civil Procedure 15(c)(1)'s relation back doctrine, the two year statute of limitations runs from the date of the Original Complaint, June 7, 2017.[8] Accordingly, Defendants argue that Bowen's claims in Counts III and IV relying on unlawful employment practices before June 7, 2015 are time-barred.

---

[7] Unlike the Americans with Disabilities Act, the Fourth Circuit determined that Congress's waiver provision that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973," 42 U.S.C. § 2000d-7 is a valid waiver of sovereign immunity. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 490-91 (4th Cir. 2005); *see also Fink v. Richmond*, No. DKC-07-0714, 2008 WL 9364730, at *5 (D. Md. Mar. 24, 2008).

[8] Federal Rule of Civil Procedure 15(c)(1) provides in relevant part that "an amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). Both parties agree that Plaintiff's amendments adding her Rehabilitation Act claims arose out of the same conduct, transaction, or occurrence set out in the Original Complaint. (ECF No. 15-1 at 10.)

Plaintiff argues, however, that her claims are not time-barred because her Rehabilitation claims "relate back to the timely-filed counts in the original complaint." (ECF No. 20 at 17.) She argues that under Rule 15, because "Counts III and IV under the Rehabilitation Act arise out of the same conduct, transaction, or occurrence as Plaintiff's indisputably timely ADA and Title VII claims, they relate back and are likewise timely filed and not barred by the statute of limitations." (ECF No. 20 at 21.) This argument misapplies the relation back doctrine. Rule 15 allows the two-year statute of limitations to run from the time Plaintiff filed her Original Complaint on June 7, 2017. The Rule does not automatically make her Rehabilitation Act claims timely because her other claims were timely filed in the Original Complaint. Accordingly, any claims under the Rehabilitation Act for unlawful employment practices before June 7, 2015 are untimely. The last event Plaintiff alleges, her resignation, occurred on May 28, 2013. Accordingly, her Rehabilitation Act claims, incorporating MFEPA's two-year statute of limitations, Md. Code Ann., State Gov't § 20-1013(a)(3), are time-barred, and Plaintiffs' Rehabilitation Act claims (Counts III, IV) are DISMISSED.[9]

### III.  Title VII Claims

---

[9] Although not raised by either party, this two-year statute of limitations is susceptible to equitable tolling. In addition to Plaintiff offering no reason for why this Court should toll the statute of limitations, "'equitable tolling is available only in those rare instances when—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Akakpo v. HSBC Bank USA, N.A.*, No. PX-16-1082, 2017 WL 1048256, at *3 (D. Md. Mar. 20, 2017) (quoting *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001)). Plaintiff could not rely on pursuing administrative remedies given that, as a state employee, she was not required to exhaust any administrative remedies under the Rehabilitation Act. *See Whitaker v. Maryland Transit Administration*, No. ELH-17-0584, 2018 WL 902169, at *30 (D. Md. Feb. 14, 2018) (explaining that under the Rehabilitation Act, non-federal employees are not required to exhaust administrative remedies) (citations omitted); *see also Ott v. Md. Dept. of Public Safety and Correctional Services*, No. RDB-16-3394, 2017 WL 3608181, at *3 (D. Md. Aug. 22, 2017) (explaining that because exhaustion was not required under the Rehabilitation Act, filing an EEOC Charge does not create the type of "exceptional circumstances" which warrant equitable tolling).

The Amended Complaint brings claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Defendant moves to dismiss both claims for failure to state a claim. This Court addresses each Count in turn.

**A. Discrimination Claim**

As the United States Court of Appeals for the Fourth Circuit recently explained in *Swaso v. Onslow County Bd. of Educ.*, No. 16-2347, 698 Fed. App'x. 745 (4th Cir. Aug. 10, 2017), a plaintiff may establish discrimination under Title VII by showing direct or circumstantial evidence that the plaintiff's status in a protected class was a motivating factor in an adverse employment action, or by relying on the burden-shifting scheme established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swaso*, 698 Fed. App'x. at 747 (citing *Holland v. Wash. Homes, Inc.*, 487 f.3d 208, 213-14 (4th Cir. 2007)). Under the *McDonnel Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by showing that (1) she or he is a member of a protected class; (2) her or his job performance was satisfactory; (3) she or he was subjected to an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable treatment.'" *Id.* (quoting *Adams v. Tr. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

While a plaintiff does not need to plead a *prima facie* case to survive a motion to dismiss, the plaintiff must meet the ordinary pleadings standard under *Twombly* and *Iqbal*. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015) (explaining that a

plaintiff is still "required to allege facts to satisfy the elements of a cause of action" under Title VII); *Johnson v. Lemonds*, No. 1:15-cv-410, 2016 WL 447494 (M.D.N.C. Feb. 4, 2016) (summarizing the tension between *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), holding that a plaintiff does not need to plead a *prima facie* case of employment discrimination at the motion to dismiss stage, with the subsequent holdings in *Iqbal* and *Twombly* that a complaint must include sufficient factual matter to plead a plausible claim). Defendants do not dispute that Plaintiff is a member of a protected class and had satisfactory job performance. Defendants assert, however, that Plaintiff fails to state a claim under the third and fourth prongs of the *McDonnell Douglas* test.

### i.     Adverse Employment Action

Beginning with the third prong, an adverse employment action is one that "'adversely affect[s] the terms, conditions or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Plaintiff asserts that she has alleged that she was: (1) transferred from her position; (2) denied employee leave donation; (3) denied FMLA leave; (4) subject to false disciplinary charges under COMAR; (5) subject to an audit of her files; (6) precluded from using the same staff, services and benefits as other employees; (7) screamed and yelled at by her supervisor; and (8) ultimately constructively discharged.

For a transfer of job assignment to constitute adverse employment action, a plaintiff must plead some "significant detrimental effect" including "'decrease in compensation, job title, level of responsibility, or opportunity for promotion.'" *Westmoreland v. Prince George's County, Md.*, 876 F.Supp.2d 594, 605 (D. Md. 2012) (quoting *James*, 368 F.3d at 375). "'The

mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action.'" *Id.* (quoting *James*, 368 F.3d at 375). While Plaintiff alleges that "involuntary transfers [we]re extremely rare," (ECF No. 9 at ¶ 38), she does not allege that as a result of the transfer she incurred a decrease in pay, job title or responsibility, or opportunity for promotion. Accordingly, the transfer does not constitute an adverse employment action.

As to Plaintiff being denied employee leave donation, she alleges that this denial altered the terms, conditions, or benefits of her employment. She alleges that on June 21, 2012 she was sent home without pay. (ECF No. 9 at ¶ 16.) During this time, her supervisor requested to donate Bowen leave. (*Id.* at ¶ 33.) This request was initially denied. (*Id.*) It was not until after Plaintiff successfully appealed the denial that her donated leave request was approved on August 6, 2012. (*Id.* at ¶¶ 33, 36- 37.) Because the denial of donated leave led to her not working, and accordingly not receiving pay, from June 21, 2012 through August 6, 2012, it constituted an adverse employment action. *See Allen v. Rumsfeld*, 273 F.Supp.2d 695, 706 (D. Md. 2003) (explaining that the denial of leave on two back-to-back days resulted in the employee not receiving pay she otherwise would have received and accordingly constituted adverse employment action).[10]

Unlike the denial of donated leave, Plaintiff has not alleged that the denial of her FMLA leave affected the terms, conditions, or benefits of her employment. First, she states that she was granted intermittent FMLA leave from February 8, 2013 through May 17, 2013

---

[10] Bowen's references to being denied donated leave in March 2013 (ECF No. 9 at ¶¶ 62-65), however, do not constitute adverse employment actions given that she does not allege that these denials altered the terms, conditions, or benefits of her employment

for her right arm/forearm. (ECF No. 9 at ¶¶ 66-67.) She relies, however, on the denial of leave for March 22 and 29 of 2013 and for various medical appointments. (*Id.* at ¶¶ 68-69.) Although these denials "may have inconvenienced Plaintiff," they do not, by themselves, "constitute an adverse employment action." *Gbenoba v. Montgomery County Dept. of Health and Human Servs.*, No. 2003-2231, 2005 WL 1490008, at *10 (D. Md. June 23, 2005) (holding that being denied leave on two particular days did not constitute adverse employment action).

Plaintiff's disciplinary charges, audit of her files, preclusion from using the same staff, services and benefits as other employees, and being "screamed and yelled at" by her supervisor also did not adversely affect the terms, conditions, or benefits of her employment. She does not allege that she lost pay or changed positions following any of the above allegations. *See Rumsfeld*, 273 F.Supp. at 706 (explaining that the plaintiff's low performance evaluations and reprimands did not constitute adverse employment actions because she did not lose pay and she maintained the same position); *see also id.* at 707 ("[N]ot being permitted to use a cash register or handle money, being told not to discuss past employment issues, and having her tardiness and absenteeism carefully documented did not adversely affect the terms, conditions, or benefits of Plaintiff's employment."); *Cepada v. Bd. of Educ. Of Baltimore County*, 814 F.Supp.2d 500, 515 (D. Md. 2011) ("[The plaintiff's] allegations that he was yelled at for complaining about his discriminatory treatment and 'criticized' for contacting his State Delegate are not materially adverse actions.").

Finally, this Court evaluates Plaintiff's claim that she was constructively discharged. The United States Supreme Court recently discussed constructive discharge in *Green v. Brennan*, 136 S.Ct. 1769 (2016). In *Green*, the Court explained that "[t]he constructive

discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Id.* at 1776 (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342 (2004)). Subsequently, in *U.S. Equal Employment Opportunity Commission v. Consol Energy, Inc.*, 860 F.3d 131, 143 (4th Cir. 2017), the United States Court of Appeals for the Fourth Circuit interpreted *Green* to no longer require a plaintiff to prove "deliberateness." *Id.* at 144 ("[A]s a result of [*Green*], 'deliberateness' is no longer a component of a constructive discharge claim."). Rather, the Supreme Court "clearly articulated the standard for constructive discharge, requiring objective 'intolerability' – 'circumstances of discrimination so intolerable that a reasonable person would resign.'" *Id.* (quoting *Green*, 136 S.Ct. at 1779).[11]

Plaintiff asserts that she "suffered through harsh conditions from the time she sought reasonable accommodations and participated in the EEOC process." (ECF No. 20 at 27.) These harsh conditions consisted of "consistent discriminatory and retaliatory behavior" including COMAR charges, being subject to ridicule and abuse, being denied benefits, and suffering "significant health consequences" of elevated stress levels and anxiety. (*Id.*) She asserts that "[n]o employee, faced with constant disciplinary charges for engaging in protected activity, could expect to remain in that environment." (*Id.*) Defendants respond that Plaintiff has not alleged that her working conditions were objectively intolerable.[12] (ECF No. 15-1 at 16.) The record does not show that Plaintiff's conditions were so intolerable that

---

[11] The Fourth Circuit further noted that "even before *Green* was decided, our court had questioned whether a "deliberateness" requirement could be squared with evolving Supreme Court case law on constructive discharge." *Consol Energy*, 860 F.3d at 144 (citing *Whitten v. Fred's Inc.*, 601 F.3d 231 (4th Cir. 2010)).

[12] Defendants also assert that Plaintiff failed to show deliberateness. As explained above, alleging deliberateness is no longer a requirement to plead a claim of constructive discharge.

she had "*no choice* but to resign." *Brady v. Bd. of Educ. of Prince George's County*, 222 F.Supp.3d 459, 476 (D. Md. 2016), *aff'd*, 707 Fed. App'x. 780 (4th Cir. 2018) (Mem). Over the course of her employment, Plaintiff was required to attend mitigation conferences three times and received two "Level 1 Reprimands." (ECF No. 9 at ¶¶ 22-30.) She further alleges that her supervisor Castain spoke to her in a "belittling manner," yelled at her, told an Agent Assistant not to assist Bowen in entering certain documents, and began to require Bowen to meet with her once a day. These conditions do not amount to the "high standard" of constructive discharge. *Blakes v. City of Hyattsville*, 909 F.Supp.2d 431, 438 (D. Md. 2012) (citing *Tawaab v. Virginia Linen Service, Inc.*, 729 F.Supp.2d 757, 783 (D. Md. 2010)); *see also Tawaab*, 729 F.Supp. at 783 ("Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." (citations omitted)); *Williams v. Giant Good Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (affirming the district court's dismissal of the plaintiff's constructive discharge claim because alleging "that her supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" did not constitute "objectively intolerable working conditions"). Therefore, the only adverse employment action Plaintiff alleges is the denial of Employee-to-Employee leave.

### ii. Circumstances Giving Rise to an Inference of Unlawful Discrimination

As to the fourth prong, Defendants assert that the Amended Complaint fails to assert any facts indicating DPSCS's actions were motivated by Plaintiff's race. Rather, "the clear import of Plaintiff's Amended Complaint is that the disparate treatment to which Plaintiff

was allegedly subjected was the result of her disability." (ECF No. 15-1 at 13.) This Court notes at the outset that although the Amended Complaint alleges discrimination on the basis of Bowen's disability, the Federal Rules of Civil Procedure permit alternative pleading. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). Thus, Bowen may also assert that she was terminated due to her race. However, as explained below Bowen fails to allege facts sufficient to support an inference of racial discrimination.

A plaintiff may allege that an adverse employment action occurred under conditions giving rise to an inference of unlawful discrimination in at least two ways: by showing "a general pattern of racial discrimination in the practices of defendant" or by relying on "comparator evidence." *Swaso v. Onslow County Bd. of Educ.*, No. 16-2347, 698 Fed. App'x. 745 (4th Cir. Aug. 10, 2017). As the Fourth Circuit explained, "[w]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, . . . '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). This includes a plaintiff showing "that they are similar in all relevant respects to their comparator," including "that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, No. 09-1604, 387 Fed. App'x. 355, 359 (4th Cir. July 6, 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

First, Plaintiff does not allege any facts concerning other employees being granted or

denied Employee-to-Employee leave. Accordingly, she has not provided any comparator evidence with regard to the alleged adverse employment action, the denial of donated leave. Second, even considering all of Plaintiff's allegations, she has not pled that DPSCS engaged in a general pattern of racial discrimination. Bowen alleges one comparison between herself and employees outside of her class: she asserts that there were two Caucasian women in her office that were permitted to work part time and light duty—requests denied for Bowen. (*Id.* at ¶¶ 51-52.) These allegations are the *only* references to race throughout the entire Amended Complaint. This is insufficient to allege a general pattern of racial discrimination. Further, with regard to the granted accommodations, although Plaintiff alleges that the Caucasian agents were "in her office," she does not allege that the two women had similar job duties and positions, dealt with the same supervisor, had similar needs as Plaintiff to work part time or on light duty, or any "common features between the individuals to allow [for] a meaningful comparison."[13] *Haywood*, 387 Fed. App'x. at 360 (citations omitted). Accordingly, she has not shown through direct or circumstantial evidence that her status in a protected class was a motivating factor in her adverse employment action, and Bowen's Title VII discrimination claim (Count V) is DISMISSED.

### B. Retaliation Claim

Plaintiff also alleges that after requesting accommodations and participating in protected activities, Defendants retaliated against her. The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a

---

[13] Nor does Plaintiff's assertion of another employee describing Castain's management style as "a lot of discrimination, agents were treated differently, Ms. Castain was harsh and made derogatory statements to some agents, [and] she helped some agents but would provide misdirection to other agents" ¶ 108, support an inference that Plaintiff was discriminated against based on her race.

causal link between the protected activity and the employment action." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010). Beginning with the first prong, Plaintiff asserts that she "engaged in protected conduct by requesting reasonable accommodations and engaging and participating in the EEOC process." (ECF No. 20 at 28.) Title VII protects against discrimination based on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2. Unlike the Rehabilitation Act and Americans with Disabilities Act, it does not cover protection against discrimination based on disability. Accordingly, Plaintiff cannot plead under Title VII the protected activity of requesting reasonable accommodations. This Court will consider, however, her protected activity of engaging in the EEOC process.

Turning to the second and third prongs, as discussed above Plaintiff has only pled the adverse employment action of being denied Employee-to-Employee Leave. Defendant argues that the claim should be dismissed for failing to show a causal link between the protected activity and employment action. The co-worker's request to donate Bowen leave was denied prior to August 6, 2012. Plaintiff did not contact the EEOC to file her Charge, however, until on or around August 28, 2012. (*Id.* at ¶ 77.) Further, the EEOC did not transmit its Notice of Charge of Discrimination to DPSCS until around September 11, 2012. (*Id.* at ¶ 78.) Therefore, the denial of donated leave cannot be attributed to Defendants being notified of her intention to file an EEOC Charge. In addition, as described above even considering all the actions Plaintiff claims were retaliatory, she has not asserted a plausible claim that they occurred due to her race. Accordingly, Plaintiff's Title VII retaliation claim (Count VI) is DISMISSED.

## IV. Hostile Work Environment Claims

Bowen brings a hostile work environment claim under all three statutes: the ADA, the Rehabilitation Act, and Title VII. She asserts that DPSCS refused reasonable accommodations and engaged in a pattern of harassment, abuse, and intolerable working conditions severe enough to "create a work environment that a reasonable person would consider intimidating, hostile, or abusive." (ECF No. 9 at ¶¶ 201-204.) Defendants move to dismiss the hostile work environment claim under all three statutes, arguing: (1) as they argued above, a claim under the ADA is barred by the Eleventh Amendment; (2) as they argued above, a claim under the Rehabilitation Act is barred by the two-year statute of limitations; and (3) Plaintiff fails to state a hostile work environment under Title VII. For the above explained reasons, Plaintiff's claims for prospective injunctive relief under the ADA are not barred by the Eleventh Amendment, and Plaintiff may proceed with her ADA hostile work environment claim so far as she is seeking reinstatement. Her Rehabilitation Act hostile work environment claim, however, is barred by the two-year statute of limitations.

Turning to Bowen's Title VII hostile work environment claim, to state a claim for hostile work environment, a plaintiff "must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). "[I]n order to ensure that a cause of action based on an alleged hostile work environment is justified by the [Title VII's]

text, the Supreme Court has emphasized time and time again that the underlying harassment must be 'so severe or pervasive as to *alter the conditions of [the victim's] employment*.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 806-08, 118 S.Ct. 2275 (1998)) (emphasis in original); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993) (explaining that a hostile work environment claim arises where "the workplace is permeated with discriminatory intimidation, ridicule and insult") (citations omitted).

Bowen argues that she suffered sufficiently severe or pervasive harassment by reciting the same events that she asserts amount to adverse employment actions, including being: (1) transferred from her position; (2) denied employee leave donation; (3) denied FMLA leave; (4) subjected to false disciplinary charges under COMAR; (5) subjected to an audit of her files; (6) precluded from using the same staff, services and benefits as other employees; (7) screamed and yelled at by her supervisor; and (8) ultimately constructively discharged. Without addressing whether these events are sufficient enough to amount to the "high standard" of her workplace being "permeated with discriminatory intimidation, ridicule and insult," *Harris*, 510 U.S. at 21, 114 S.Ct. 367, Bowen has failed to allege that the harassment was based on her race. "To establish a hostile work environment claim, [Plaintiff] must show that 'but for' his race . . ., he would not have been the victim of the alleged discrimination." *Id.* at 775. Again, the only racial references in the Amended Complaint are Plaintiff's allegations that two Caucasian women were permitted to work part time and on light duty, unlike Bowen. There are no references to individuals outside her class being transferred, denied leave, treated as Bowen was by Castain, or undergoing audits and receiving

disciplinary charges. Accordingly, even if the above alleged events did create harassment sufficiently severe or pervasive, she has not alleged that she was subjected to a hostile work environment based on her race. Therefore, while Plaintiff may proceed with her hostile work environment claim under the ADA as far as she seeks prospective injunctive relief, she may not proceed with her hostile work environment claim under the Rehabilitation Act or Title VII.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 15) is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' Motion is GRANTED as to Plaintiff's Rehabilitation Act and Title VII claims and Counts III-VI are DISMISSED. Further, Plaintiff's claims under Count VII for hostile work environment under the Rehabilitation Act and Title VII are also DISMISSED. However, as to Plaintiff's ADA claims, the Motion is DENIED as to Bowen's claims for prospective injunctive relief under Counts I, II, and VII, and Plaintiff may proceed to seek reinstatement under the ADA for her claims of discrimination, retaliation, and hostile work environment.

A separate order follows.


Dated:        April 12, 2018


                                        _____/s/_____

                                        Richard D. Bennett
                                        United States District Judge